## STATE OF CONNECTICUT *v.* STEVEN B. KULMAC
### (14792)
### (14793)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

44

Argued December 3, 1993—decision released July 5, 1994

*Temmy Ann Pieszak,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *John M. Massameno,* senior assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant, Steven B. Kulmac, was charged in two separate informations that were consolidated for trial to a jury, and remain consolidated for this appeal. The defendant was convicted of committing numerous sexual offenses[1] against two minors,

---

[1] The defendant was convicted of the following fifteen of the eighteen counts in the first long form information pertaining to incidents occurring in Meriden:

C and K.[2] In total, the defendant was convicted of eight
counts of sexual assault in the first degree in violation

Count Four: Sexual assault in the first degree in violation of General Statutes § 53a-70 (a) by inserting his finger in C's vagina at her home in Meriden in the summer of 1986.

Count Five: Sexual assault in the first degree in violation of General Statutes § 53a-70 (a) by inserting his penis in C's vagina at her home in Meriden in the summer of 1986.

Count Six: Sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) by inserting his finger in C's vagina at her home in Meriden in the summer of 1986.

Count Seven: Sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) by inserting his penis in C's vagina at her home in Meriden in the summer of 1986.

Count Eight: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting C to sexual contact at her home in Meriden in the summer of 1986.

Count Nine: Sexual assault in the first degree in violation of General Statutes § 53a-70 (a) by inserting his penis in C's vagina at her home in Meriden in the summer of 1986.

Count Ten: Sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) by inserting his penis in C's vagina at her home in Meriden in the summer of 1986.

Count Eleven: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting C to sexual contact at her home in Meriden in the summer of 1986.

Count Twelve: Sexual assault in the first degree in violation of General Statutes § 53a-70 (a) by inserting his finger in C's vagina at her home in Meriden in the fall of 1986.

Count Thirteen: Sexual assault in the first degree in violation of General Statutes § 53a-70 (a) by inserting his penis in C's vagina at her home in Meriden in the fall of 1986.

Count Fourteen: Sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) by inserting his finger in C's vagina at her home in Meriden in the fall of 1986.

Count Fifteen: Sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) by inserting his penis in C's vagina at her home in Meriden in the fall of 1986.

Count Sixteen: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting C to sexual contact at her home in Meriden in the fall of 1986.

Count Seventeen: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting K to sexual contact at a previous home in Meriden in the summer of 1986.

Count Eighteen: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting K to sexual contact at her home in Meriden in June to December of 1986.

of General Statutes § 53a-70 (a),[3] eight counts of sexual assault in the second degree in violation of General

The defendant was convicted of the following twelve of the twenty-three counts in the second long form information pertaining to incidents in Southington:

Count One: Sexual assault in the first degree in violation of General Statutes § 53a-70 (a) by inserting his finger in C's vagina while at her home in Southington in the fall of 1987.

Count Two: Sexual assault in the first degree in violation of General Statutes § 53a-70 (a) by inserting his penis in C's vagina while at her home in Southington in the fall of 1987.

Count Four: Sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) by inserting his finger in C's vagina while at her home in Southington in the fall of 1987.

Count Five: Sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) by inserting his penis in C's vagina while at her home in Southington in the fall of 1987.

Count Seven: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting C to sexual contact while at her home in Southington in the fall of 1987.

Count Eight: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting C to sexual contact while at her home in Southington in the fall of 1987.

Count Eighteen: Sexual assault in the first degree in violation of General Statutes § 53a-70 (a) by inserting his finger in K's vagina while at her home in Southington in the fall of 1987.

Count Nineteen: Sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) by inserting his finger in K's vagina while at her home in Southington in the fall of 1987.

Count Twenty: Sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) by subjecting K to sexual contact while at her home in Southington in the fall of 1987.

Count Twenty-one: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting K to sexual contact while at her home in Southington in the fall of 1987.

Count Twenty-two: Sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) by subjecting K to sexual contact while at her home in Southington on December 25, 1987.

Count Twenty-three: Risk of injury to a child in violation of General Statutes § 53-21 by subjecting K to sexual contact while at her home in Southington on December 25, 1987.

[2] In accordance with General Statutes § 54-86e, the two minor victims in this case will not be referred to by name, but instead will be referred to by the letters C and K.

[3] General Statutes (Rev. to 1989) § 53a-70 provides in relevant part: "SEXUAL ASSAULT IN THE FIRST DEGREE. CLASS B FELONY: ONE YEAR NOT SUS-

Statutes § 53a-71 (a) (1),[4] two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A),[5] and nine counts of risk of injury to a child in violation of General Statutes § 53-21.[6] The defendant appealed from the judgments of conviction.[7]

The defendant claims that the trial court improperly: (1) disregarded the defendant's right to confrontation by excluding evidence of sexual abuse of the victims by men other than the defendant; (2) refused to conduct an in camera inspection of the victims' department of children and youth services (DCYS) records; (3) admitted testimony of the defendant's prior miscon-

PENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person. . . ." This statute has since been revised. See Public Acts 1989, No. 89-359.

[4] General Statutes § 53a-71 provides in relevant part: "SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDA-BLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[5] General Statutes § 53a-73a provides in relevant part: "SEXUAL ASSAULT IN THE FOURTH DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[6] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[7] The defendant appeals pursuant to General Statutes § 51-199 (b) (3), which provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

duct; (4) instructed the jury on the definition of risk of injury to a child; (5) disregarded due process by considering unreliable evidence at sentencing; (6) disregarded the defendant's right against double jeopardy by charging the defendant in separate counts with acts arising out of the same offense, and convicting the defendant for sexual assault in the first and second degree for the same acts; (7) convicted the defendant of one count each of sexual assault in the first degree and second degree despite insufficient evidence; (8) convicted the defendant of one count of risk of injury despite insufficient evidence; (9) convicted the defendant of two counts of sexual assault in the first degree despite insufficient evidence and an improper jury instruction on consent; and (10) failed to enforce the applicable statute of limitations, and tried time-barred charges in the same proceeding as charges that were not time-barred. We affirm the judgments of the trial court.

The jury could reasonably have found the following facts. The victims, C and K, were sisters who were born in June, 1975, and August, 1976, respectively. At the time of trial, C was fifteen years old and K was fourteen years old. Between April, 1985, and June, 1986, they lived with their mother, father and younger brother in Meriden. With their family, they then moved to another home in Meriden, and in December, 1986, they moved to Southington. The defendant was a friend of the victims' father, and the victims referred to him as "Uncle Steve."

Pursuant to an order of the juvenile session of the Superior Court, Bruce Freedman, a family psychologist, evaluated K and C in May and June, 1988, when they were nearly twelve and thirteen years old, respectively. According to Freedman, both children were below average in intelligence. K's intelligence quotient was 61, which placed her in the mildly retarded range.

People in that range are very slow to learn and tend to confuse time sequences, but they are able to perceive events. C's intelligent quotient was 84, making her a little below average or a slow learner, but still enabling her to be placed in a regular classroom.

The defendant subjected the victims to a series of sexual abuses, commencing with K when she was nine years old and with C when she was eleven years old. The incidents typically occurred while the defendant was home alone with one of the victims. The defendant typically fondled the victim's breasts and vaginal area, with her clothes either on or off, and then proceeded to acts of intercourse, including vaginal penetration by the defendant's fingers or penis. Both victims resisted these acts. Each victim knew that the other was being similarly treated by the defendant, and both were too frightened of the defendant to tell anyone. Nonetheless, at some point, both victims informed their mother, and K informed her school counselor about the assaults. The abuses spanned a period of approximately two years.

I

The defendant first claims that the trial court violated his right to confront witnesses against him by excluding evidence that other men had sexually abused the victims. This claim rests on two distinct arguments. First, the defendant argues that the rape shield statute, General Statutes § 54-86f,[8] does not apply to the

---

[8] General Statutes § 54-86f provides in relevant part: "ADMISSIBILITY OF EVIDENCE OF SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered

charges of risk of injury to a child under § 53-21. Second, the defendant argues that the evidence is admissible under the constitutional exception to the rape shield statute, § 54-86f (4). The defendant contends that this error requires a new trial on all charges. We disagree with both parts of the defendant's claim.

The following facts are relevant to this issue. During the defendant's cross-examination of K, outside the presence of the jury, the defendant argued that he should be permitted to examine K regarding sexual assaults perpetrated against her by her father and two other men. The defendant argued that this evidence was relevant to demonstrate that K had mistakenly attributed assaults allegedly committed on her by other people to the defendant. The trial court ruled that the proposed evidence was barred by the rape shield statute. In reaching this decision, the trial court found that K exhibited no confusion in identifying the defendant as the person who had committed the charged offenses.

The defendant raised similar arguments with respect to C. Relying on C's written statement that she had been sexually abused by her father and two other men, the defendant argued that C had mistakenly attributed those other assaults to the defendant. The trial court reviewed C's statement and noted that the allegations of sexual abuse regarding C's father had occurred in the spring of 1987, and that the allegations of sexual abuse by the other two men occurred in the summer and fall of 1987. The conduct by the defendant, however, began in 1985 and continued until 1987. The trial court found that C did not appear confused, and that

by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. . . ."

it was unlikely that C had confused the other sexual abuses, committed in 1987, with the abuses committed by the defendant beginning in 1985. Therefore the trial court ruled that the rape shield statute barred cross-examination on the abuses by the other men reported in her written statement. The trial court did, however, permit the defendant to cross-examine C regarding sexual contact by a party not included in her written statement, because that alleged contact had occurred at the same time as the contact by the defendant.

The defendant first argues that the rape shield statute, § 54-86f, does not apply to accusations of risk of injury under § 53-21. The defendant raised this argument at trial, and the trial court ruled that because offenses listed in the rape shield statute were included in the same prosecution as the risk of injury charges, the rape shield statute governed the admissibility of the evidence.

Section 54-86f provides that "[i]n any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible . . . ." The defendant is correct that § 53-21 is not included in the list of offenses to which § 54-86f states it applies. That observation, however, does not end our inquiry.

The rules pertaining to the admissibility of evidence in Connecticut are subject to the exercise of both judicial and legislative authority. *State* v. *James,* 211 Conn. 555, 560, 560 A.2d 426 (1989); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1993 Sup.) § 1.1.2. "Plainly, every statute has some boundaries, and the question then arises whether, and when, it is appropriate to apply the statute, as a matter of common law, beyond its designated boundaries." E. Peters, "Common Law Judging in a Statutory World: An Address," 43 U. Pitt. L. Rev. 995, 1005 (1982). In other contexts,

"we have previously used statutes as a useful source of policy for common law adjudication, particularly if there was a close relationship between the statutory and common law subject matters." *Fahy* v. *Fahy,* 227 Conn. 505, 514, 630 A.2d 1328 (1993); accord *New England Savings Bank* v. *Lopez,* 227 Conn. 270, 281, 630 A.2d 1010 (1993); *Canton Motorcar Works, Inc.* v. *DiMartino,* 6 Conn. App. 447, 453, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986). We consider this adjudicative technique to be appropriate in this case.

"General Statutes § 54-86f greatly restricts the admissibility of evidence of the prior sexual conduct of a sexual assault victim." *State* v. *Williams,* 20 Conn. App. 263, 268, 565 A.2d 1365 (1989). The policies behind the rape shield statute are well established. See, e.g., H. Galvin, "Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade," 70 Minn. L. Rev. 763 (1986); V. Berger, "Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom," 77 Colum. L. Rev. 1 (1977). The statute is intended to protect victims' personal privacy, to shield them from unnecessary harassment and embarrassment in court, and to encourage them to disclose sexual assault by reducing some of the deterrents to reporting. *State* v. *Christiano,* 228 Conn. 456, 469–70, 637 A.2d 382 (1994); *State* v. *Rinaldi,* 220 Conn. 345, 356, 599 A.2d 1 (1991); *State* v. *Cassidy,* 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). Moreover, the statute reflects a modern understanding of the general irrelevance of prior sexual conduct to particular allegations of rape. *State* v. *Cassidy,* supra, 379.

All of these policies apply to the current case. C and K were victims, not only of risk of injury to a child, but also of sexual assault in the first, second and fourth degrees. These latter offenses are all specifically desig-

nated by the rape shield statute. Thus, C and K were specifically entitled to the protection of the rape shield statute for many of the charges tried in this case. We cannot accede to the argument that the policies promoted by the rape shield statute are as tightly linked to the particular statutory section as the defendant suggests. As victims of multiple kinds of sexual abuse, C and K were within the class of witnesses that the rape shield statute contemplates. It is irrelevant that the prosecution for sexual assault included charges of risk of injury as well.

We conclude, therefore, as a matter of common law, that the rape shield statute, § 54-86f, applies to prosecutions for risk of injury to a child under § 53-21, at least if the prosecution also involves allegations of sexual assault under any or all of the sections specified in § 54-86f.[9] Thus, the trial court properly excluded the evidence of prior sexual abuse of C and K.

The defendant next contends that the evidence of sexual abuse by other men is admissible under the constitutional exception to the rape shield statute. Section 54-86f (4) provides that evidence of prior sexual conduct of the victim that would be inadmissible under other provisions of the statute, is admissible if it is "otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." The defendant contends that excluding the evidence of prior abuses violated his constitutional right to confront witnesses against him.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution 'to confront the witnesses against him

---

[9] We need not address in this case whether, as a matter of common law, the provisions of the rape shield statute would apply to a prosecution for risk of injury under General Statutes § 53-21, based upon the sexual conduct of a defendant, that does not also implicate any of the sections listed in General Statutes § 54-86f.

. . . .' " *State* v. *Lubesky,* 195 Conn. 475, 481, 488 A.2d 1239 (1985). Nonetheless, every evidentiary ruling that denies a defendant a line of inquiry is not a violation of his constitutional rights. "The defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process." (Internal quotation marks omitted.) *State* v. *Mastropetre,* 175 Conn. 512, 521, 400 A.2d 276 (1978); *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985).

The defendant contends that the multiplicity of people who sexually abused the victims created a risk of confusion between, and misidentification of, the various perpetrators.[10] The defendant contends that the victims may have confused which person committed which act, and that precluding cross-examination on this possibility violated his right to confrontation. We are unpersuaded that this issue is of constitutional magnitude here. Whether there is a sufficient basis for a claim that a witness is confused, so as to permit cross-examination that would otherwise be inadmissible, is a question of fact that is properly left to the discretion of the trial court. In this case, the trial court permitted extensive cross-examination concerning the numerous counts of sexual abuse committed by the defendant, and had ample opportunity to observe whether the victims confused or intermixed the events that were at issue at trial. Moreover, the trial court explicitly found that neither victim appeared confused, and that any abuses committed on C were too remote in time from the abuses at issue in the trial to cause confusion. These decisions were properly within the discretion of the trial court.

---

[10] Under General Statutes § 54-86f (1), evidence of the victim's prior sexual conduct may be admitted to identify the perpetrator of an alleged sexual assault if, for example, the question of identification hinges upon the source of semen or a pregnancy. The purported risk of misidentification in this case is not of that kind.

The defendant further contends that excluding the evidence that the victims had been sexually abused by other men prevented him from eliciting evidence of bias and motive to testify. Specifically, the defendant argues that the victims blamed the defendant for assaults perpetrated by other people in order to shield the other people from harm. The defendant contends that the existence of the other alleged abuses is a necessary factual predicate for this argument.

The record does not support this claim. First, the victims themselves had informed the police of the instances of abuse and the identities of the perpetrators whom the defendant suggests that the victims wished to keep hidden. Second, at the time of trial, the other perpetrators had already been convicted of the assaults of which they had been accused. These facts make it unlikely that the victims testified against the defendant simply to shield these other men. Under these circumstances, we cannot conclude that the trial court violated the defendant's right to confront witnesses against him by excluding the evidence of prior sexual abuse.

## II

The defendant next claims that the trial court violated his right to confrontation by refusing to conduct an in camera inspection of the victims' DCYS records. Relying on *State* v. *Apostle,* 8 Conn. App. 216, 234, 512 A.2d 947 (1986), the defendant argues that the correct procedure is for the trial court to review the DCYS records in camera, without the necessity of an antecedent showing of cause by the defendant, and for the court to disclose to the defendant any relevant information contained in the records. We disagree.

After C and K completed their trial testimony, the defendant subpoenaed their entire DCYS files. In attempting to gain access to these records, the defend-

ant argued that he "assumed" the files would contain accounts of the abuse and that "if" those accounts differed from testimony at trial, it would affect the victims' credibility. The assistant state's attorney had examined the files previously but at the time of trial could not recall their contents. An agent of DCYS familiar with the case was readily available, however, and she indicated that she had found nothing inconsistent or exculpatory in the files. In the absence of any preliminary showing of cause, the court declined either to conduct an in camera review of the records, or to authorize their disclosure to the defendant for inspection.

We have not previously had occasion to set forth the standard for a criminal defendant to gain access to the confidential DCYS records of a victim/witness. At the time of trial, General Statutes (Rev. to 1991) § 17a-28 (b) provided: "Neither the commissioner of children and youth services nor any of his employees shall disclose or transmit, in whole or in part, the nature or content of any communications or records of any person to any other individual, corporation or municipal, state or federal agency, without the consent of the person, his attorney or his authorized representative, except as provided in subsection (c) of this section."[11] This constitutes a broad legislative declaration of confidentiality.

The defendant's right to confrontation, however, prevents such confidentiality from being unconditional. *State* v. *Januszewski,* 182 Conn. 142, 171, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). In determining the circumstances under which disclosure may be required, we look to our previous decisions relating to similar statu-

---

[11] The exception in subsection (c) of General Statutes § 17a-28 is inapplicable to the current appeal. Furthermore, § 17a-28 has been amended in ways that do not affect the current appeal. See Public Acts 1991, No. 91-299, § 1 (b).

tory schemes.[12] In *State* v. *Esposito,* 192 Conn. 166, 179, 471 A.2d 949 (1984), we considered the disclosure of confidential psychiatric records. General Statutes § 52-146e (a), after defining the scope of coverage and designating statutory exceptions, provides: "[N]o person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative." *Esposito* was a sexual assault case in which the defendant sought access to the victim's psychiatric records for impeachment purposes. Balancing the importance of confidentiality against the defendant's right to confront witnesses against him, we concluded: "If . . . the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. If the consent is limited to an in camera inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the

---

[12] The defendant relies on *State* v. *Apostle,* supra, 8 Conn. App. 216. The Appellate Court in *Apostle* relied on General Statutes (Rev. to 1985) § 17-47a. The Appellate Court failed, however, to consider the then existing version of § 17a-28, namely, General Statutes (Rev. to 1985) § 17-431. Thus, little can be gained from the Appellate Court's interpretation of the scope of confidentiality of DCYS records. We note further that, although the statute upon which the Appellate Court relied still existed at the time of trial in this case, it has since been repealed. See Public Acts 1991, No. 91-299, § 2.

resealed record is to be made available for inspection on appellate review. If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event of refusal." *State* v. *Esposito,* supra, 179–80; see also *State* v. *Bruno,* 197 Conn. 326, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986).

We have reached the same conclusion in the context of records of a rape crisis center; *In re Robert H.,* 199 Conn. 693, 705, 509 A.2d 475 (1986) (General Statutes § 52-146k); and records of treatment for substance abuse; *State* v. *Joyner,* 225 Conn. 450, 477, 625 A.2d 791 (1993) (General Statutes § 17a-630 [c]); both of which are confidential. Indeed, we have required a preliminary showing of cause before requiring a trial court to examine subpoenaed school records, which do not have a similar statutory shield of confidentiality. *State* v. *James,* 211 Conn. 555, 578, 560 A.2d 426 (1989) (General Statutes § 10-15b). The disclosure of DCYS records requires that the same balance be struck between the witness' statutory right to confidentiality and the defendant's right to confrontation. We conclude, therefore, that the trial court properly declined to conduct an in camera review of the DCYS records in the absence of a preliminary showing by the defendant.

### III

The defendant next claims that the trial court improperly admitted as evidence of motive, intent and common scheme, testimony that the defendant had sexually abused another person. The defendant contends that the error requires a new trial on all counts. We disagree with the defendant's claim.

The state introduced evidence that the defendant had sexually assaulted a different girl, S, approximately seven years before he began sexually assaulting C and K. S, who was twenty-three years old at the time of the trial, testified that when she was approximately eleven years old, the defendant had occasionally kissed her, rubbed her breasts, put his hand down her pants to touch her vagina, and placed her hand against his penis. The defendant was married at the time to S's sister and lived in an apartment above the family residence of S. The trial court found this evidence to be highly probative of the defendant's intent, motive and common scheme to abuse young girls sexually. The trial court further found that the probative value of the evidence substantially outweighed the prejudicial effect. Both prior to admitting the evidence and in its final instructions, the trial court instructed the jury to use the testimony as evidence of common plan or common scheme.[13]

As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368 (1970). Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. *State* v. *Brown,* 199 Conn. 47, 56, 505 A.2d 1225 (1986). "On the other hand, evidence of crimes so connected with the principal crime by circum-

---

[13] There is some inconsistency between the trial court's ruling on admissibility and its jury instructions. The trial court admitted the evidence for purposes of proving common scheme, plan, design, motive, intent and credibility. Yet the court instructed the jury only on common scheme. We need not resolve this disparity because we conclude that the evidence was admissible to prove that the defendant had a common scheme to abuse young girls sexually. For purposes of analysis, we treat the evidence as having been admitted only for purposes of proving a common scheme, and we do not address whether the evidence could be used for additional purposes.

stance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. The rules of policy have no application whatever to evidence of any crime which directly tends to prove that the accused is guilty of the specific offense for which he is on trial." (Internal quotation marks omitted.) *State* v. *Esposito,* supra, 192 Conn. 169; *State* v. *Morowitz,* 200 Conn. 440, 442, 512 A.2d 175 (1986). We have developed a two part test to determine the admissibility of such evidence. "First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Citation omitted; internal quotation marks omitted.) *State* v. *Mandrell,* 199 Conn. 146, 151, 506 A.2d 100 (1986).

The primary responsibility for making these determinations rests with the trial court. We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. *State* v. *Morowitz,* supra, 200 Conn. 446; *State* v. *Johnson,* 190 Conn. 541, 549, 461 A.2d 981 (1983).

The first prong of the test requires the trial court to determine if an exception applies to the evidence sought to be admitted. In this case, the trial court admitted the evidence that the defendant had sexually abused S because of its tendency to prove that the defendant possessed a common scheme to abuse young girls sexually. "When evidence of other offenses is offered to show a common plan or design the marks which the uncharged and the charged offenses have in common must be such that it may be logically inferred that if the defendant is guilty of one he must be guilty of the other." *State* v. *Esposito,* supra, 192 Conn. 172. To guide this analysis, we have held that "[e]vidence

of prior sex offenses committed with persons other than the prosecuting witness is admissible to show a common design or plan where the prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness." Id., 169–70. We are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than other crimes. *State* v. *Hauck,* 172 Conn. 140, 145, 374 A.2d 150 (1976).

The defendant first argues that the evidence of prior misconduct was inadmissible because it was too remote. The remoteness in time of a prior incident is rarely, standing alone, determinative of the admissibility of such evidence; rather, it is one factor to be considered by the trial court in making its decision. *State* v. *Morowitz,* supra, 200 Conn. 446. In this case, approximately seven years had elapsed between the alleged abuse of S and the commencement of the abuse of C and K. Although seven years is a long hiatus, we cannot conclude that the trial court abused its discretion by determining that the evidence was sufficiently recent to have probative value.[14]

The defendant further argues that the evidence did not display any special similarity to the charged offenses. The alleged abuse of S, however, was similar to the charged offenses in a number of respects. All three of the victims were young girls, ranging in ages between nine and eleven years at the commence-

---

[14] Our conclusion is consistent with the conclusions of courts in many other jurisdictions. See, e.g., *United States* v. *Hadley,* 918 F.2d 848, 851 (9th Cir. 1990) (admitting evidence of molestation of young boy ten years before charged molestation of different boy); *Adrian* v. *People,* 770 P.2d 1243, 1245 (Colo. 1989) (admitting evidence of assaults of two children ten years before assault at issue in trial); *Gezzi* v. *State,* 780 P.2d 972, 974–75 n.4 (Wyo. 1989) (admitting evidence of prior molestation of third party victim, and indexing other cases that have admitted such evidence).

ment of the assaults. In each case, the defendant had a close relationship with the victim's family, which gave him access to the victim. Furthermore, S's testimony that the defendant had kissed her and rubbed her breasts and vaginal area resembled the testimony that C and K provided about the defendant's early acts of abuse. We conclude that the trial court did not abuse its discretion when it found that the misconduct described by S was probative of a common scheme of behavior toward young girls. See *State* v. *Esposito,* supra, 192 Conn. 173–74 (defendant exhibited common scheme of behavior because his two victims were similar in age, and defendant became inebriated before using knife to force victim to engage in oral and then vaginal intercourse); *State* v. *Hauck,* supra, 172 Conn. 146–47 (defendant school teacher exhibited common scheme of behavior by using his position of authority to obtain or seek sexual favors from two female students in return for favorable academic treatment).

The second prong of the analysis requires the trial court to determine whether the prejudicial tendencies of the evidence outweigh its probative value. *State* v. *Mandrell,* supra, 199 Conn. 152. In this case, the trial court heard a lengthy offer of proof and arguments of counsel before performing the required balancing test. The trial court specifically found that the evidence was highly probative and material, and that its probative value significantly outweighed the prejudicial effect. Furthermore, the trial court instructed the jury on the limited use of the evidence in order to safeguard against misuse and to minimize the prejudicial impact. *State* v. *Brown,* supra, 199 Conn. 58; *State* v. *Braman,* 191 Conn. 670, 682, 469 A.2d 760 (1983). Under these circumstances, the trial court did not abuse its discretion by permitting the state to introduce the evidence of prior misconduct by the defendant.

## IV

The defendant next claims that the trial court deprived him of his fundamental rights to a fair trial and due process of law by omitting, from its jury instructions on the offense of risk of injury, the limiting judicial gloss of *State* v. *Schriver,* 207 Conn. 456, 542 A.2d 686 (1988).[15] The defendant contends that the omission requires a new trial on all counts of risk of injury. We decline to reach the merits of this claim because the defendant has failed to preserve it in the trial court.

The defendant concedes that he failed to raise this claim at trial, but he seeks to prevail under the doctrine of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[16] Under *Golding,* however, a defendant cannot prevail on an unpreserved claim of constitutional error unless the state has failed to demonstrate that the error, if subject to a harmless error analysis, is harmless beyond a reasonable doubt. Id., 240.

In this case, the state has persuaded us that the constitutional error, if any, was harmless beyond a reasonable doubt. Seven of the defendant's nine convictions of risk of injury were associated with convictions

---

[15] In *State* v. *Schriver,* supra, 207 Conn. 466–67, we held that if the risked impairment is to the child's health, General Statutes § 53-21 proscribes "deliberate, blatant abuse" that imperils the child's physical, rather than mental, well-being. If the risked impairment is to the child's morals, § 53-21 proscribes acts performed "in a sexual and indecent manner." Id., 463. The trial court's instruction did not use this language.

[16] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 213 Conn. 239–40.

of sexual assault; see footnote 1; that is, the conduct that led to the conviction of risk of injury also led to a conviction of at least one other offense such as first or second degree sexual assault. The conduct that supported the remaining two counts of risk of injury involved incidents of touching K's breasts and vaginal areas. There is no evidence in the record to support an inference that the defendant touched K's private parts for innocent purposes, such as hygienic or medicinal concerns. Moreover, the overwhelming evidence relating to other aspects of the case supports the conclusion that the touching was done for indecent or sexual purposes. We are convinced beyond a reasonable doubt that any error in omitting the *Schriver* gloss from the jury instructions was harmless. "Under such circumstances, it would be a waste of judicial resources, and a pedantic exercise, to delve deeply into the constitutional merits of a claim that can appropriately be resolved in accordance with the relevant harmless error analysis." *State* v. *Golding,* supra, 213 Conn. 242; see also *State* v. *Hayes,* 20 Conn. App. 737, 747, 570 A.2d 716, cert. denied, 215 Conn. 802, 574 A.2d 718 (1990). The defendant's claim therefore fails.

V

The defendant next claims that the trial court violated his right to due process of law by relying on inaccurate and unreliable information at sentencing. Specifically, the defendant argues that the trial court's belief that the defendant was the first person sexually to assault the victims was inaccurate because there was evidence that other people had had sexual contact with the victims prior to the defendant. The defendant cannot prevail on this claim because he failed to preserve it at trial, and he has failed to meet all the requirements of *State* v. *Golding,* supra, 213 Conn. 239–40.

At sentencing, the trial court stated that the defendant occupied a position of responsibility within the vic-

tims' family, and that he had been "the first one that broke that trust." The defendant did not object to this statement at the time. Moreover, although the trial court did not articulate the evidentiary basis of its statement, the record contains a statement by C, in reference to the defendant's first act of sexual assault, that "no one had ever done this to me before." Furthermore, she testified that the act had caused her to bleed from her vagina. The record also reveals, however, that sexual contact had occurred between C and one other person during approximately the same time frame that C had contact with the defendant.

Generally, the requirements of due process at sentencing are not as rigorous as at trial. *Williams* v. *New York,* 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337, reh. denied, 337 U.S. 961, 69 S. Ct. 1529, 93 L. Ed. 1760 (1949); *State* v. *Huey,* 199 Conn. 121, 505 A.2d 1242 (1986). "As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicia of reliability. . . . As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Citation omitted.) *State* v. *Huey,* supra, 127. The trial court had sufficiently reliable information available to it for its statement.

In light of the reduced requirements of due process at sentencing, we cannot conclude that the defendant was deprived of his constitutional rights, as required by the third prong of *State* v. *Golding,* supra, 213 Conn. 239–40. See footnote 16. Accordingly, the defendant cannot prevail on this claim.

## VI

The defendant next claims that the trial court violated his right against double jeopardy by charging him

with separate counts arising out of the same offense, and by convicting him of sexual assault in the first and second degrees for the same acts. We disagree with both of these claims.

"Double jeopardy prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense." (Internal quotation marks omitted.) *State* v. *Snook,* 210 Conn. 244, 261, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). The double jeopardy analysis in the context of a single trial is a two part process. "First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Greco,* 216 Conn. 282, 290–91, 579 A.2d 84 (1990). "The defendant on appeal bears the burden of proving that the prosecutions are for the same offense in law and fact." *State* v. *Snook,* supra, 264.

A

The defendant first argues that his right against double jeopardy was violated by the convictions for counts five and nine, seven and ten, and eight and eleven in the Meriden case, and by counts seven and eight in the Southington case. See footnote 1. The defendant contends that because each set of counts, by its very language, charged the defendant twice with each offense, he could not have been convicted of both counts in each set. The defendant failed to preserve this claim and thus he seeks to prevail on *State* v. *Golding,* supra, 213 Conn. 239–40. See footnote 16.

The record reveals that the defendant committed two separate acts of sexual abuse upon C in her latter Meriden residence during the summer of 1986. C testified that once, while she had been in her bedroom,

the defendant had entered the room and touched her breasts and her vagina. He then forcibly removed her clothing and put his finger and penis in her vagina. This evidence supported the defendant's convictions for counts four through eight of the Meriden information, namely, two counts of first degree sexual assault, two counts of second degree sexual assault, and one count of risk of injury. C further testified that once, while she had been in the living room watching television, the defendant forcibly had touched her vagina through her clothing, had removed her clothes and had put his penis in her vagina. This evidence supported the defendant's convictions for counts nine through eleven of the Meriden information, namely, first and second degree sexual assault, and risk of injury.

The record further reveals that the defendant committed two separate acts of abuse upon C in her Southington residence in the fall of 1987. C testified that the defendant, while alone with her, forcibly had pulled C onto the couch, had removed both of their pants, and had put his finger and penis in her vagina. This evidence supported the convictions for counts one, two, four, five, seven and eight of the Southington information, namely, two counts of sexual assault in the first degree, two counts of sexual assault in the second degree, and two counts of risk of injury.

The defendant's contention fails the first part of the two part test for double jeopardy in a single trial because the counts do not arise out of the same act or transaction. Each separate act of sexual assault or risk of injury constituted a separate offense. *State* v. *Snook,* supra, 210 Conn. 264; *State* v. *Rawls,* 198 Conn. 111, 121, 502 A.2d 374 (1985). In this case, there were two separate incidents of sexual assault on C in the latter Meriden residence, one incident in the living room and one in her bedroom. Because there were two separate transactions, the defendant could constitutionally be

convicted of offenses arising from each transaction.[17] Similarly, in Southington, the defendant's penetration of C by his finger and by his penis constituted two legally distinct acts. See, e.g., *State* v. *Frazier,* 185 Conn. 211, 229, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). Each act can constitutionally support a separate conviction for risk of injury. Accordingly, we cannot conclude under *State* v. *Golding,* supra, 213 Conn. 233, that a constitutional violation exists.

### B

The defendant also contends that his right against double jeopardy was violated by convicting him of first degree sexual assault under § 53a-70 (a), and second degree sexual assault under § 53a-71 (a) (1), for the same acts. We disagree.

This contention fails the second part of the two part test for a double jeopardy violation because the charged crimes are not the same offense. *State* v. *Depastino,* 228 Conn. 552, 638 A.2d 578 (1994); *State* v. *Greco,* supra, 216 Conn. 291. First, each offense requires proof of a fact that the other does not. See *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). As the Appellate Court has stated, "[t]he plain language of the two statutory sections indicates that while sexual assault in the first degree requires proof of force or threatened use of force, sexual assault in the second degree does not. . . . Furthermore, in order to convict a defendant of sexual

---

[17] C was uncertain about the time of the incidents, and knew only that both occurred in the summer of 1986. Hence, the language of the information appeared to be redundant: counts arising from each incident simply referred to her latter Meriden residence in the summer of 1986. This apparent redundancy, however, does not constitute a double jeopardy violation, and the defendant does not claim a lack of proper notice. We note, moreover, that the proper time to complain of any deficiency in notice would have been at trial.

assault in the second degree, the state must show that the victim was under the age of sixteen. . . . The statute proscribing sexual assault in the first degree contains no similar requirement. . . . Application of the *Blockburger* test demonstrates that these are separate crimes for which the defendant could be prosecuted and punished without violating the prohibition against double jeopardy." (Citations omitted.) *State* v. *Blackwell,* 20 Conn. App. 193, 197, 565 A.2d 549, cert. denied, 213 Conn. 810, 568 A.2d 794 (1989).

The application of the *Blockburger* test does not end the analysis, however. "[T]he *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." (Internal quotation marks omitted.) *State* v. *Greco,* supra, 216 Conn. 292. In this case, the two statutes have different purposes. We agree with the Appellate Court that "[t]he gravamen of sexual assault in the first degree is the protection of all persons from being compelled to engage in sexual activity by force or threat of force. On the other hand, the statute proscribing sexual assault in the second degree was drafted to prohibit persons from engaging in sexual activity with individuals who are deemed to lack the capacity to consent." *State* v. *Blackwell,* supra, 20 Conn. App. 197–98. The defendant has therefore failed to persuade us that the convictions for sexual assault in the first and second degrees for the same act violated his right against double jeopardy.

VII

The defendant next claims that the evidence was insufficient to support the convictions for first and second degree sexual assault under counts four and six of the Meriden information. See footnote 1. We disagree.

At trial, C testified that in the summer of 1986, at her latter Meriden residence, the defendant had entered her bedroom, had touched her breasts and vagina with his hand, and then had put his penis in her vagina. Subsequently, the state introduced into evidence a portion of C's written statement to the police. This statement referred to vaginal penetration by the defendant's finger as well as his penis. The trial court admitted this statement for substantive purposes without limiting it to its consistency with C's trial testimony. The trial court instructed the jury that it could consider the entire statement "as if [the witness] testified here before you." The defendant did not object to these terms of the admission of the evidence. The jury ultimately found the defendant guilty of two counts of sexual assault by digital penetration as alleged in the written statement.

The defendant contends that there was no evidence to sustain the convictions for digital penetration because the only evidence of digital penetration was in C's written statement, and the statement should only have been admitted insofar as it was consistent with C's testimony. Whatever merit this argument might have had if the defendant had objected at trial, it has little merit now. If evidence is admitted without objection, it is given such weight as the trier of fact deems it is worth. *State* v. *Rawls,* supra, 198 Conn. 118; *State* v. *Banks,* 194 Conn. 617, 620, 484 A.2d 444 (1984); *State* v. *Ruth,* 16 Conn. App. 148, 152, 547 A.2d 548 (1988), cert. denied, 209 Conn. 827, 552 A.2d 434 (1989).

The standard of review of an insufficiency claim is well established. "We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the infer-

ences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Harris,* 227 Conn. 751, 757, 631 A.2d 309 (1993); *State* v. *Milardo,* 224 Conn. 397, 402–403, 618 A.2d 1347 (1993); *State* v. *Lewis,* 220 Conn. 602, 606, 600 A.2d 1330 (1991). We conclude that, including the written statement, there was sufficient evidence for the jury reasonably to have concluded that the defendant was guilty of the offenses alleged in counts four and six.

## VIII

The defendant claims that the evidence was insufficient to support the conviction of risk of injury under count seventeen of the Meriden information. See footnote 1. Specifically, the defendant contends that § 53-21 prohibits two alternative courses of conduct, and that the evidence was insufficient to convict the defendant of both statutory alternatives. We decline to review this unpreserved claim.

At trial, K testified that while she resided at her prior home in Meriden, the defendant touched her breasts and vaginal area through her clothing. Based on this testimony, the jury found the defendant guilty of risk of injury under count seventeen of the Meriden information.

Section 53-21 provides in pertinent part that it is illegal to perform an act "likely to impair the health or morals" of a child. See footnote 6. Committing acts likely to impair the health of a child and committing acts likely to impair the morals of a child are two different means of committing the same crime. See *State* v. *Schriver,* supra, 207 Conn. 461. In *Schriver,* we concluded that the risk to "health" prohibited by § 53-21 is limited to "blatant physical abuse" that endangers

a child's physical well-being; id., 466–67; and that a risk of injury to a child's mental health alone, without attendant risk to the child's physical health, is not within the meaning of "health" as used in § 53-21. We also held in *Schriver* that in order to sustain a conviction of risk of injury to a child's morals under § 53-21, the defendant's conduct had to be done "in a sexual and indecent manner." Id., 463. Thus, although the defendant's fondling of the victim's breasts and vaginal area under count seventeen in this case was sufficient under the "morals" part of § 53-21, it was arguably insufficient under the "health" part.[18]

We have previously stated that "[a] verdict rendered on a single count charging alternative methods of committing the same crime may be upheld only if there is sufficient evidence to support the verdict as to each alternative charged." *State* v. *Hufford,* 205 Conn. 386, 399, 533 A.2d 866 (1987); *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987); *State* v. *Marino,* 190 Conn. 639, 651, 462 A.2d 1021 (1983). Under this principle, it is improper for a trial court to submit to the jury a method of committing the crime charged that is not supported by the evidence. Recent case law, however, has cast doubt on the viability of this principle; see *Griffin* v. *United States,* 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991); and in *State* v. *Chapman,* 229 Conn. 529, 643 A.2d 1213 (1994), we determined that any error in this regard is not constitutional in nature.

The defendant in this case failed to preserve this claim at trial. He did not object to the jury instruction,

---

[18] There are instances, however, in which the same sexual conduct constitutes a violation of both the "health" and "morals" prohibitions of General Statutes § 53-21. See, e.g., *State* v. *James,* supra, 211 Conn. 585 (attempted sexual intercourse with twelve year old female victim violated both "morals" prohibition and "health" prohibition because of risk of pregnancy). Indeed, that risk was presumably present in many of the other counts under which the defendant was convicted in this case.

which included both statutory alternatives, nor did he raise this claim in any postverdict proceedings in the trial court. Thus, the trial court never had an opportunity to rule on the claim. We have consistently held that we are not bound to review on appeal unpreserved, nonconstitutional claims. See, e.g., *State* v. *Hammond,* 221 Conn. 264, 289, 604 A.2d 793 (1992); *State* v. *Golding,* supra, 213 Conn. 233; *State* v. *Smith,* 209 Conn. 423, 426, 551 A.2d 742 (1988); *State* v. *Bailey,* 209 Conn. 322, 338, 551 A.2d 1206 (1988). Furthermore, the defendant has made no effort to persuade us that the plain error doctrine; see Practice Book § 4185; requires a reversal on this count of the information.[19] We therefore decline to review the defendant's claim.

## IX

The defendant next claims that the convictions for sexual assault in the first degree under counts five and nine of the Meriden information must be reversed because there is insufficient evidence to support the convictions, and because the trial court improperly failed to instruct the jury on the element of consent. We disagree with both claims.

The record reveals that there were two instances of sexual assault in the summer of 1986 at C's latter Meriden residence. See part VI A of this opinion. Regarding the instance underlying count nine, which occurred while C was watching television in the living room, C testified that she had not wanted the defend-

---

[19] In order to prevail under the plain error doctrine, the defendant would be required to establish not only that his conviction on this count "affects the fairness and integrity of and public confidence in the judicial proceedings"; (internal quotation marks omitted) *State* v. *Boles,* 223 Conn. 535, 551, 613 A.2d 770 (1992); but that it is more probable than not that the jury was misled by the trial court's purported error into convicting him on the "health" portion of the statute rather than the "morals" portion. Our examination of the entire record of this case leaves us doubtful that the defendant would be able to meet those standards.

ant to have intercourse with her, and that she had tried unsuccessfully to push him away. C stated that she had failed because "He's a big guy. I mean, he's strong." Regarding the incident underlying count five, which occurred in C's bedroom, C testified that she had not wished the defendant to have intercourse with her, but she had not told him to stop because she had been afraid.

We note at the outset that, although C is deemed to be legally incapable of consenting to intercourse, this incapacity does not affect charges of sexual assault in the first degree. Sexual assault in the first degree relates to intercourse by threat or use of force, regardless of the age of the victim, whereas sexual assault in the second degree relates to intercourse with persons under the age of sixteen. Thus, for purposes of convictions for sexual assault in the first degree, the question is not the age of the victim but the use of force or threat of use of force.

The evidence supporting the conviction for count nine is plainly sufficient. C testified that she physically but unsuccessfully had resisted the defendant's assault. Viewing the evidence in the light most favorable to sustaining the verdict; *State* v. *Harris,* supra, 227 Conn. 757; we conclude that the jury could reasonably have found the defendant guilty of sexual assault in the first degree.

The evidence supporting the conviction for count five is also sufficient. The focus in a sexual assault case is not the conduct of the victim and the adequacy of resistance, but the conduct of the defendant and the use of force or threat of use of force. See *State* v. *Smith,* 210 Conn. 132, 137, 554 A.2d 713 (1989); *State* v. *Jackson,* 30 Conn. App. 281, 288, 620 A.2d 168, cert. denied, 225 Conn. 916, 623 A.2d 1026 (1993); *State* v. *Mackor,* 11 Conn. App. 316, 527 A.2d 710 (1987); S. Estrich,

"Rape," 95 Yale L.J. 1087, 1094–1132 (1986). The victim was not required to resist the defendant every time he assaulted her, particularly in this case, in which she testified that she had been afraid of the defendant and she knew by experience that he was too strong for her to succeed. See *State* v. *Robinson,* 225 Conn. 519, 523–24, 624 A.2d 889 (1993). Again viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury could reasonably have inferred that the defendant used his superior physical size and strength, or an implied threat thereof, to compel C to engage in intercourse.

Relying on *State* v. *Smith,* supra, 210 Conn. 132, the defendant further argues that the trial court improperly failed to instruct the jury that it was required to find that a reasonable person in the defendant's position would have known that C did not consent. The defendant's reliance on *Smith,* however, is misplaced. In *Smith,* the defendant claimed that the victim's conduct was ambiguous as to whether she consented to the intercourse. In this case, the defendant made no such claim. The defendant's argument at trial was that no intercourse had occurred. Indeed, the defendant did not even request the charge that he now asserts the trial court improperly failed to give. In such circumstances, it was not improper for the trial court not to charge the jury on consent. See *State* v. *Jeffrey,* 220 Conn. 698, 718–19, 601 A.2d 993 (1991), cert. denied, U.S.     , 112 S. Ct 3041, 120 L. Ed. 2d 909 (1992).

## X

The defendant finally claims that the trial court committed plain error by failing to dismiss the Meriden case on the ground that the charges were time-barred under General Statutes (Rev. to 1987) § 53a-69.[20] The defend-

[20] General Statutes (Rev. to 1987) § 53a-69 provides: "No prosecution may be instituted or maintained under this part unless the alleged offense

ant further claims that combining the time-barred charges in the Meriden case in the same trial as the charges in the Southington case, which were not time-barred, prejudiced his trial on the latter charges. The defendant cannot prevail on this unpreserved claim.

Both C and K testified that they had told their mother of some of the incidents in Meriden at the time they had occurred. The victims' mother, however, testified that she had not heard about the allegations until after they had been reported to the police. Although all the assaults in the Meriden case occurred before December, 1986, no assaults were reported to the police until early in 1988, more than one year after the last assault had occurred.

Section 53a-69, which was in effect at the time of trial, barred sexual assault prosecutions involving minor victims if the allegations were not brought to the attention of the police within a year after a parent learns of the alleged assault. See *State* v. *Whiteman,* 204 Conn. 98, 102, 526 A.2d 869 (1987). The defendant did not object to the prosecution on the basis of this statute at the time of trial.

Because the defendant failed to raise this claim at trial, he seeks review under the plain error rule. "It is also well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Boles,* 223 Conn. 535, 551, 613 A.2d 770 (1992); *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985).

was brought to the notice of public authority within one year of its occurrence or, where the alleged victim was less than sixteen years old or incompetent to make complaint, within one year after a parent, guardian or other competent person specially interested in the alleged victim learns of the offense." This statute has since been repealed. See Public Acts 1987, No. 87-223.

The record in this case does not reveal an obvious error that would undermine public confidence in the fairness and integrity of the judicial proceedings. First, § 53a-69, on its face, only applied to part VI of the penal code, which covers General Statutes §§ 53a-65 through 53a-90. Thus, in the absence of a contrary construction by the trial court, the time limitation would not have affected counts eight, eleven, sixteen, seventeen or eighteen of the Meriden information. See footnote 1. Second, the victims' mother testified that she had not been notified of the offenses until after they had been reported to the police. With this testimony, and without a ruling by the trial court on the mother's credibility, we cannot find plain error in the trial court's failure to apply § 53a-69 to any of the charges against the defendant.

The judgments of the trial court are affirmed.

In this opinion PETERS, C. J., and NORCOTT, J., concurred.

BERDON, J., dissenting. I agree with Justice Katz' well reasoned dissent concerning parts III and VIII of the majority opinion. Although the defendant raises other claims that trouble me, I need not reach them, because the improper admission of the uncharged misconduct evidence would require a new trial on all counts.

KATZ, J., with whom BERDON, J., joins, dissenting. I disagree with the conclusions reached in parts III and VIII of the majority opinion. First, I believe that the trial court abused its discretion in admitting S's testimony that the defendant had molested her. Second, I believe that the defendant's constitutional rights were violated when the trial court improperly instructed the jury on a method of committing the crime charged that was not supported by the evidence. On this point, I refer

to Justice Berdon's dissenting opinion in *State* v. *Chapman,* 229 Conn. 529, 548, 643 A.2d 1213 (1994), in which I joined.

With regard to the misconduct evidence, S testified that the defendant had sexually assaulted her on several occasions when she was ten or eleven years old. The assaults consisted of the defendant kissing her, rubbing her breasts, touching her genitals and forcibly placing her hand on his genitals. At the time, the defendant was married to S's sister and lived in the same building as S's family. The trial court concluded that this evidence was probative of the defendant's "common scheme sexually to abuse young girls," and that its probative value substantially outweighed its prejudicial effect. I believe that this conclusion was incorrect and that the trial court abused its discretion.

The rule in Connecticut is that prior misconduct evidence is inadmissible to prove that a defendant is guilty of the crime charged; *State* v. *Baldwin,* 224 Conn. 347, 354, 618 A.2d 513 (1993); *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368 (1970); and may not be used to suggest that the defendant has a propensity for criminal behavior. *State* v. *Morowitz,* 200 Conn. 440, 442, 512 A.2d 175 (1986); *State* v. *Brown,* 199 Conn. 47, 56, 505 A.2d 1225 (1986). I agree with the majority that Connecticut, like many other states and the federal courts, recognizes an exception to the general rule of inadmissibility for misconduct evidence that "is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity . . . ." (Internal quotation marks omitted.) *State* v. *Baldwin,* supra, 354. Nevertheless, I disagree with the majority's conclusion that S's testimony falls within an exception because it "was probative of a common scheme of behavior toward young girls." I believe that the majority is bending the

rules of evidence in order to carve out, for sexual assault cases, a special exception to the rule against admitting misconduct evidence.

In *State* v. *Esposito,* 192 Conn. 166, 172, 471 A.2d 949 (1984), this court discussed, in detail, the requirements for the common scheme exception: "When evidence of other offenses is offered to show a common plan or design the marks which the uncharged and the charged offenses have in common must be such that it may be logically inferred that if the defendant is guilty of one he must be guilty of the other. . . . It is apparent that the indicated inference does not arise, however, from the mere fact that the charged and uncharged offenses share certain marks of similarity, for it may be that the marks in question are of such common occurrence that they are shared not only by the charged crime and [the] defendant's prior offenses, but also by numerous other crimes committed by persons other than [the] defendant." (Citation omitted; internal quotation marks omitted.) The majority, relying on *Esposito,* concludes that S's testimony was properly admitted under the "common scheme" exception because: (1) it "resembled" the testimony of C and K; (2) the defendant had maintained a close relationship with the families of all three girls; and (3) all three girls had been young when the alleged assaults had commenced, ranging from nine to eleven years old. I believe that these very broad similarities are clearly inadequate to bring S's testimony within the common scheme exception.

First, the similarities relied on by the majority are not in any way distinctive. Two of the three "similarities"—the ages of the victims and the defendant's close relationship with the victims' families—are of such "common occurrence" that they apply to pedophiles generally. See Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association

3d Ed. Rev. 1987) § 302.20, p. 284. The third "similarity"—i.e., the types of sexual activities alleged by the victims—is not really a similarity at all. C and K accused the defendant of sexual activities ranging from fondling, to vaginal and anal intercourse, to digital penetration, to attempted oral sex. All of these activities, as well as those alleged by S, are common to pedophiles generally. See id. Moreover, almost any sexual activity would "resemble" the testimony of C and K because of the broad range of conduct they described. The only specific acts that S's testimony had in common with that of C and K was the defendant's alleged touching of their breasts and pubic areas. In *State* v. *Rogers,* 293 S.C. 505, 507, 362 S.E.2d 7 (1987), the court held that the trial court had erred in admitting uncharged misconduct evidence from the victim's sister, when "the only connection between the testimony of the two [sisters] was [that the defendant had] touched them both."

Second, even if the alleged assaults on S and C and K were more similar and therefore shared more in "common," there is no evidence whatsoever that these assaults were connected as part of an overall plan. To be admissible, the uncharged act of misconduct must be "so intertwined with the crime charged as to indicate that they are separate components of a general plan." *United States* v. *Dothard,* 666 F.2d 498, 504 (11th Cir. 1982). "Courts have admitted extrinsic act evidence to show a defendant's design or plan to commit *the specific* crime charged, but never to show a design or plan to commit *crimes of the sort* with which he is charged." (Emphasis in original; internal quotation marks omitted.) Id., 502. This court adopted that principle in *State* v. *Conroy,* 194 Conn. 623, 626, 484 A.2d 448 (1984), which held that "evidence of *similar* but *unconnected* crimes is generally not admissible to prove a criminal defendant's guilt. Such evidence can

show no more than the defendant's bad character or an abstract disposition to commit a crime; it provides no proof of guilt of the specific offense in question. *State v. Gilligan,* 92 Conn. 526, 531, 103 A. 649 (1918); see *State v. Esposito,* [supra, 192 Conn. 169]." (Emphasis added.) Because the only possible connection between the alleged assaults on S and the alleged assaults on C and K seven years later is that the defendant has a disposition to molest young girls whom he knows, S's testimony should not have been admitted.

Professor Edward Imwinkelried of the University of California at Davis has divided cases under the common plan exception into two categories, "true plan" cases and "spurious plan" cases. He writes that "[i]n a true plan case, the courts hold that the prosecutor may prove any uncharged crime by the defendant which shows that the defendant in fact and in mind formed a plan including the charged and uncharged crimes as stages in the plan's execution. . . . [B]oth crimes must be inspired by the same impulse or purpose. Both crimes must be steps toward the accomplishment of the same final goal. They are different stages of the plan." E. Imwinkelried, Uncharged Misconduct Evidence (1984) § 3:21, pp. 53–54. Moreover, "it is not enough to show mere similarity between the crimes. Standing alone, a series of similar acts does not establish the existence of a true plan. A series of similar robberies could be the result of separate decisions to rob. There must be a permissive inference that both crimes were related to an overall goal in the defendant's mind." Id., § 3:22, p. 58; see also 1 C. McCormick, Evidence (4th Ed. 1992) § 190, pp. 800–801 (to fall within common plan exception, "[e]ach crime should be an integral part of an overarching plan explicitly conceived and executed by the defendant").

Professor Imwinkelried is critical of "spurious plan" cases, in which "[the] courts are quite liberal in admit-

ting uncharged misconduct . . . . If the proponent can show a series of similar acts, these courts admit the evidence on the theory that a pattern or systematic course of conduct is sufficient to establish a plan. Similarity or likeness between crimes is a sufficient showing. In effect, these courts convert the doctrine into a plan-to-commit-a-series-of-similar-crimes theory. . . . In reality, the courts are permitting the proponent to introduce propensity evidence in violation of the prohibition [against the admission of misconduct evidence]. Proof of a number of similar [crimes] may be probative of the defendant's status as a professional criminal. However, if . . . there is no inference of a true plan in the defendant's mind, the proponent is offering the evidence on a forbidden theory of logical relevance. It is immaterial that there are many instances of similar acts by the defendant; the number of the acts increases the acts' probative value on the issue of the defendant's propensity, but standing alone the number of acts cannot change the propensity quality of the theory of relevance. The courts are illicitly allowing the proponent to prove the defendant's character, disposition, or propensity." E. Imwinkelried, supra, § 3:23, pp. 61–62.

In recent years, appellate courts have relied on Professor Imwinkelried's cogent analysis to reverse trial court decisions admitting prior misconduct evidence in sexual assault cases. *Ali* v. *United States,* 520 A.2d 306 (D.C. 1987), is precisely on point. In *Ali,* the victim claimed that the defendant, who had been her mother's boyfriend, had molested her over a two year period starting when she was thirteen. The victim testified that the defendant had touched her breasts, and had engaged in vaginal and anal intercourse with her. Id., 308. Over the defendant's objection, the trial court allowed the government to introduce evidence under the common scheme or plan exception that on a few

occasions, the defendant had touched the breasts of the victim's younger sister. Id., 309. The defendant was convicted.

On appeal, the District of Columbia Court of Appeals held that the introduction of the evidence concerning the sister was reversible error, because that evidence "is relevant to charges that [the] appellant engaged in sexual intercourse and sodomy with an entirely different individual on separate occasions only by means of one inference: because [the] appellant did so with [the sister], he did so with [the victim]. That is precisely the 'propensity' inference forbidden by [the rule against admitting uncharged misconduct evidence]." Id., 311. The court agreed with Professor Imwinkelried that "[t]he distinguishing characteristic of the common scheme or plan exception to inadmissibility is the existence of a true plan in the defendant's mind which includes the charged and uncharged crimes as stages in the plan's execution: the series of crimes must be mutually dependent." Id., 312; see also *Government of the Virgin Islands* v. *Pinney,* 967 F.2d 912, 916 (3d Cir. 1992) (evidence of uncharged sexual misconduct inadmissible under common plan exception, because "the government has been unable to articulate any theory that united these isolated events which occurred six years apart, without resorting to the kind of character-based inference prohibited by [the rule against admitting uncharged misconduct evidence]"); *People* v. *Engelman,* 434 Mich. 204, 221, 453 N.W.2d 656 (1990) (trial court erred in admitting evidence of uncharged sexual misconduct because the defendant "did not have a single plan which encompassed both of these acts, and it does not appear on this record that the acts were in different stages of the same, comprehensive plan"); *State* v. *Eubank,* 60 Ohio St. 2d 183, 186, 398 N.E.2d 567 (1979) (trial court erred in admitting evidence of uncharged sexual misconduct under the common plan

exception because the uncharged acts were not "inextricably related" to the charged crime, but instead were "chronologically and factually separate occurrences").

In the case before us, there is absolutely no evidence that there existed "a true plan in the defendant's mind" that included the alleged assaults on S and on C and K as stages in its execution. Indeed, the facts before us present a much weaker basis for drawing the inference of a common plan than the facts of *Ali.* In *Ali,* the victims of the charged and uncharged misconduct were sisters, and all the misconduct occurred within the same time frame. In contrast, in the present case, seven years separated the charged and the uncharged misconduct, and S and C and K were not related. Even if we assume that the defendant molested S, it is unreasonable to infer that at the time he did so, he had a plan in his mind that encompassed the molestation of two unrelated individuals several years in the future.[1]

---

[1] In establishing the requirements for the common plan exception, the majority in *State* v. *Esposito,* supra, 192 Conn. 170, relied, in part, on *People* v. *Thomas,* 20 Cal. 3d 457, 573 P.2d 433, 143 Cal. Rptr. 215 (1978). In *Thomas,* the defendant was convicted of molesting and having sexual intercourse with his stepdaughter and his natural daughter when they were twelve years old and nine years old, respectively. *People* v. *Thomas,* supra, 463. The stepdaughter testified that the defendant had begun molesting her when she was eight years old. Id., 474 n.1 (Clark, J., dissenting). The trial court permitted an older natural daughter of the defendant to testify that, when she was between the ages of six and fourteen, the defendant had molested and had sexual intercourse with her. Id., 463. Although the conduct with the older natural daughter predated the charged offenses by ten years, it predated the molestation of the stepdaughter by only six years. Id., 474 n.1 (Clark, J., dissenting). The California Supreme Court held that the conduct with the older natural daughter was "too remote in time" to establish that the defendant had "a continuing common plan or scheme to molest all of his daughters." Id., 466; see also *State* v. *Hooten,* 735 S.W.2d 823, 824 (Tenn. Crim. App. 1987) (evidence of similar uncharged sexual misconduct that occurred five years before the charged offense was too remote to establish a common plan or scheme); *Government of the Virgin Islands* v. *Pinney,* supra, 967 F.2d 916 (six years). I believe that the defendant's alleged misconduct with S is similarly too remote in time to be considered to be part of a continuing plan encompassing the alleged assaults on C and K.

The majority cannot and does not claim that the charged and uncharged acts of misconduct in this case were connected by a true plan in the defendant's mind. Indeed, the only connection they claim between the charged and uncharged acts is the defendant's desire to sexually abuse young girls. Such a desire does not amount to a plan: "Characterizing a plan in terms of a general bad motive may be probative of an accused's *status* as a bad person, but if there is no inference of a specific plan in the accused's mind which interconnects the uncharged and charged acts, then the other crimes evidence is offered for nothing other than the accused's propensity to commit a series of similar but discrete bad acts." (Emphasis in original.) *Ali* v. *United States,* supra, 520 A.2d 311; see also *United States* v. *Brown,* 880 F.2d 1012, 1015 (9th Cir. 1989) (to be admissible, a prior act of misconduct "must establish a motive to commit the crime charged, not simply a propensity to engage in criminal activity").

I believe that the majority is bending the rules of evidence in order to carve out, for sexual assault cases, a special exception to the rule against admitting misconduct evidence. This is indicated by the statement in the majority opinion that "[w]e are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than other crimes." Some states have established such a special exception explicitly, rather than distorting, in sexual misconduct cases, the common plan exception or the other exceptions. See, e.g., *State* v. *McFarlin,* 110 Ariz. 225, 228, 517 P.2d 87 (1973) (creating an "emotional propensity" exception for cases involving sexual aberration, such as child molestation); *Brackens* v. *State,* 480 N.E.2d 536, 539 (Ind. 1985) ("evidence of past acts involving or showing a depraved sexual instinct are admissible to establish that a defendant committed a sex crime").

The problem with creating such a special exception is that two similar but distinct acts of sexual misconduct, separated in time, do not necessarily establish a propensity or disposition on the part of the defendant. In *State* v. *Treadaway,* 116 Ariz. 163, 167, 568 P.2d 1061 (1977), the Arizona Supreme Court recognized that "[t]he admissibility of the prior act depends upon its relevancy, which involves complicated questions of sexual deviancy in a sophisticated area of medical and scientific knowledge. . . . In addition, statistical evidence generally indicates that, in relation to other classes of criminal offenses, sexual offenses as a group have a low rate of recidivism . . . . This information would indicate that evidence of prior similar acts may be less probative for sex crimes than for other kinds of crimes, and it supports the criticism of this exception." The *Treadaway* court held that the defendant's conviction for sodomizing a young boy had to be reversed because the state had introduced evidence that the defendant had sodomized another young boy three years before the charged crime, but had not introduced expert medical testimony establishing that the uncharged misconduct demonstrated a continuing emotional propensity to commit the charged crime. Id. In light of the remoteness of the uncharged misconduct in this case, and the fact that many of the acts allegedly perpetrated on C and K had not been perpetrated on S, I question whether S's testimony is relevant at all to the crimes charged, even for the currently impermissible purpose of demonstrating propensity.

In criticizing a court that upheld the admission of evidence of uncharged sexual acts with young girls other than the victim in order to show the defendant's motive " 'to gratify his lustful desire by grabbing or fondling young girls,' " Richard Lempert and Stephen Saltzburg state: "Clearly the evidence is only relevant in that it suggests a propensity to assault young girls. One

wonders whether the . . . court would have condoned the admission of evidence of other thefts in a trial for theft on the grounds that it showed the defendant's 'desire to satisfy his greedy nature by grabbing other people's belongings.' Perhaps they would if theft left them as upset and uncomprehending as a sexual assault on a fifteen year old." R. Lempert & S. Saltzburg, A Modern Approach to Evidence (2d Ed. 1982) p. 230. Sexual assault is a terribly brutal and emotionally damaging crime, especially where the victims are minors. This does not, however, justify the adoption of special rules allowing the state to introduce any evidence of prior sexual misconduct that it can dig up against the defendant.

The judgment of the trial court should be reversed, and this case should be remanded for a new trial.[2]

I respectfully dissent.

---

[2] Because the admission of evidence of uncharged sexual misconduct is presumed to be prejudicial to the defendant unless it is admitted for a substantial, legitimate purpose; *State* v. *Ouellette,* 190 Conn. 84, 95, 459 A.2d 1005 (1983); I need not consider the issue of harmless error.