STATE OF CONNECTICUT *v.* GREGORY BURRUS
(AC 18881)

Lavery, C. J., and Landau and Zarella, Js.

Argued May 10—officially released October 10, 2000

*Robert W. Smith*, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Kathleen E. McNamara*, assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Gregory Burrus, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the first degree in violation of General Statutes § 53a-122 (a) (4).[1] On appeal, the defendant claims that the trial court improperly (1) found that there was sufficient evidence to support the jury's verdict and (2) failed to instruct the jury on an essential element of the offense charged.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In February, 1992, the defendant applied to the department of transportation (department) to provide taxi service as Washington Cab Company. The application included a document called the "Taxi Over-Ten-Mile Tariff," which provided that a trip ten miles or

[1] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars."

[2] The defendant's brief raises four issues. The first three issues concern the sufficiency of evidence presented by the state. The defendant claims that the court improperly denied his motion for judgment of acquittal at the conclusion of the state's case-in-chief and at the conclusion of trial. Further, the defendant claims that the court improperly found that there was sufficient evidence to support the jury's verdict. The defendant, by electing to proceed and put on his own evidence after the denial of his motion for judgment of acquittal at the end of the state's case-in-chief, waived his right to appellate review of the sufficiency of the evidence at end of the state's case-in-chief. *State* v. *Spillane*, 54 Conn. App. 201, 206, 737 A.2d 479, cert. granted on other grounds, 251 Conn. 914, 740 A.2d 866 (1999). The defendant's first two claims require the same analysis as the sufficiency claim, and, therefore, we will address only the sufficiency claim.

more is charged at a flat rate of $1.75 per mile.[3] On November 5, 1992, the defendant attended a hearing in which his permit was being considered for approval. At that hearing, he again learned about rates. Upon approval by the department, the defendant registered his car as a taxi with the department and received his taxicab license plates.

In February, 1993, the defendant was approved as a medical transportation provider for the department of social services (social services) for medicaid recipients. As part of the social services manual, the defendant received all of social services' policies and procedures and sample billing forms. The defendant also received a copy of the "Taxi Over-Ten-Mile Tariff" form and a mileage guide.

Social services reimburses a contracted driver at the metered rates if the trip is under ten miles and, if more than ten miles, at the flat rate of $1.75 per mile. An accounts examiner for social services discovered irregularities in the defendant's billing amounts from October to December, 1993. A further review of the defendant's billing history showed that the defendant had overbilled the medicaid program for travel provided to at least twenty-eight medicaid recipients. The total amount of the defendant's overbilling exceeded three hundred thousand dollars. After social services audited the defendant's billing, the defendant admitted that he prepared all the billings himself so his employees would not know the amount of his earnings.

On July 30, 1998, the jury returned a verdict of guilty of one count of larceny in the first degree. On September 18, 1998, the court sentenced the defendant to a total effective sentence of ten years, execution suspended after four years, and five years probation. This appeal followed. Additional facts will be set forth as they

---

[3] Local trips of nine miles or fewer are based on metered rates.

become relevant in the context of the defendant's claims.

I

The defendant claims first that the court improperly found that there was sufficient evidence to support the jury's verdict. We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993). In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). The jury's function as the trier of fact is to draw all reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Wideman*, 36 Conn. App. 190, 203, 650 A.2d 571 (1994), cert. denied, 232 Conn. 903, 653 A.2d 192 (1995). As a reviewing court, we must decide whether, on the facts established and inferences that could be reasonably drawn from those facts, the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Jarrett*, 218 Conn. 766, 770–71, 591 A.2d 1225 (1991)." (Internal quotation marks omitted.) *State* v. *Torrence*, 37 Conn. App. 482, 485, 657 A.2d 654 (1995).

General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (4) the property is obtained by defrauding

a public community, and the value of such property exceeds two thousand dollars." General Statutes § 53a-119, in defining larceny, provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . (6) Defrauding of public community. A person is guilty of defrauding a public community who (A) authorizes, certifies, attests or files a claim for benefits or reimbursement from a local, state or federal agency which he knows is false; or (B) knowingly accepts the benefits from a claim he knows is false; or (C) as an officer or agent of any public community, with intent to prejudice it, appropriates its property to the use of any person or draws any order upon its treasury or presents or aids in procuring to be allowed any fraudulent claim against such community. . . ."

The defendant moved for a judgment of acquittal at the end of the state's case-in-chief and at the conclusion of trial. The defendant claims that the state failed to prove that he intended to defraud a public community. The defendant argues that his contract with social services had no set rate, and, therefore, the rate charged by the defendant and paid by the state was not fraudulent. The defendant claims that he was performing livery, not taxi, services and that that distinction explains the differences in billings.

While the defendant's contract with social services contained no set rate for services, it is obvious from the language of the contract that it was a contract drafted to cover a variety of different service providers. Specifically, the contract provided that the defendant was to "[r]ender service or services as specified in the Standard Application Form . . . ."

On his application, the defendant selected "taxi" and not "livery" as his transportation specialty and he listed his taxicab certificate number. As part of his application, the defendant signed a "Taxi Over-Ten-Mile Tariff" form. The mileage rate on that form is specifically listed as $1.75 per mile. The form also lists the defendant's taxi certificate number, and the defendant's signature appears at the bottom. Further, the jury heard extensive evidence about the defendant defrauding the state, specifically, the defendant's submission of high numbers of bills, escalating charges and billings for more trips than had been made. For instance, medical records for several medicaid clients and the bills submitted for those clients showed overbilling. The jury also heard testimony that revealed that while the defendant had applied for a livery license after he had provided taxi services, that application was subsequently withdrawn and no livery license was ever obtained.

Upon a review of the record and after consideration of the arguments of counsel, we conclude that there was sufficient evidence presented from which the jury reasonably could have found that all of the elements of larceny in the first degree had been proven beyond a reasonable doubt.

II

The defendant claims next that the court improperly failed to instruct the jury on an essential element of the offense charged. Specifically, he claims that the court failed to include in its jury charge instructions concerning consent as an element of larceny. The defendant concedes that he failed to preserve this claim at trial and now asks for relief pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is

adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. . . . We may . . . dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." (Citation omitted; internal quotation marks omitted.) *State* v. *Dunbar*, 37 Conn. App. 338, 341, 656 A.2d 672, cert. denied, 233 Conn. 906, 657 A.2d 644 (1995).

In the present case, the record is adequate to review the defendant's claim. The defendant also has alleged a claim of constitutional magnitude. *State* v. *Floyd*, 253 Conn. 700, 706–707, 756 A.2d 799 (2000). We conclude, however, that the defendant's claim fails the third prong of *Golding* because the alleged constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial.

A conviction for larceny in the first degree, pursuant to § 53a-122 (a) (4), requires that a person commit larceny as defined by § 53a-119 and that the property be obtained by defrauding a public community. Larceny as defined by § 53a-119 includes, but is not limited to, defrauding a public community by filing a claim for benefits or reimbursement from a local, state or federal agency that is known to be false or knowingly accepting benefits from a claim that is known to be false. The defendant cites no authority for the proposition that lack of consent is an element of the crime of larceny. We conclude, therefore, that the defendant failed to

show that the court's instruction to the jury on the offense charged clearly deprived him of a fair trial. Accordingly, the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.